**UNITED STATES of America**

**v.**

**Mikhail KHAIT, Defendant.**

**No. 85 CR 0042 (VLB).**

United States District Court, S.D. New York.

Sept. 17, 1986.

Paul Summit, Asst. U.S. Atty., New York City, for the U.S.

Henry Putzel, III, New York City, for defendant.

**MEMORANDUM ORDER**

VINCENT L. BRODERICK, District Judge.

Defendant Mikhail Khait has moved for an order dismissing the indictment against him on the ground that his continued prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. For the reasons that follow, the motion is denied.

**I.**

The chronology of events which led to this motion is undisputed by the parties:

On January 17, 1985 defendant and others were indicted for extortion, and for conspiracy to commit extortion. They were charged, *inter alia*, with threatening a New York businessman named Boris Granik.

On March 3, 1986 jury selection began in the trial of Khait. That day, the government was informed that Granik, who was to be the government's main witness at trial, would refuse to testify if called. He indicated he would not testify because on March 2, 1986 his wife had received a telephone call threatening her and her family with death if he testified. Both parties agreed to complete jury selection, and did so. Court was adjourned until the next day so the government could determine whether it wished to proceed with the trial. The jury had not yet been sworn.

On March 4, the next day, Granik appeared in court with his attorney and iterated his refusal to testify. The government then informed the court it would seek an order of civil contempt against Granik should he refuse to testify. The government suggested that a contempt sanction could not be imposed unless a jury had been sworn and Granik refused thereafter

to testify. Defendant agreed.[1] The jury was sworn, and upon Granik's continued refusal to testify, I found him in civil contempt and ordered his incarceration. Then, at the government's request I adjourned the trial until March 20.

On March 20, over the government's objection, I released Granik: there had been no indication from him that he would testify, and I concluded that any further incarceration would not serve any useful coercive purpose.

On April 1, after another adjournment, the government moved for a mistrial with the objective of recommencing the trial at a later date. Defendant opposed the motion, asserting that he was ready to proceed to trial. I granted the motion for a mistrial, formally discharged the jury, and this motion ensued.[2]

## II.

Defendant argues that because jeopardy attached with the swearing of the jury, and because the jury was subsequently discharged upon the government's motion for a mistrial, the Double Jeopardy Clause of the Fifth Amendment bars his reprosecution on the indictment. He characterizes the question at issue on this motion to be whether there was "manifest necessity" for the declaration of a mistrial following Granik's refusal to testify; he argues that there was no such necessity because the government knew its main witness would not be available to testify and yet proceeded to the empanelling of a jury. Defendant stresses that the government declined the court's invitation to hold a hearing concerning the alleged threats to Granik, and did not produce evidence linking defendant to those threats.

The government agrees that the "manifest necessity" standard applies, but contends that there was a manifest necessity for the declaration of a mistrial upon the facts of the case. It argues that no factual hearing was necessary to link defendant Khait to the alleged threats, and that there was no hint of government misconduct upon which a retrial could be barred. The government suggests that the mistrial was granted only after other alternatives had been explored, and that there will be no prejudice to the defendant if a retrial ensues.

## III.

In assessing defendant Khait's double jeopardy claim, I agree with the parties that the "manifest necessity" standard, first enunciated over 160 years ago in *U.S. v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), is applicable. *Perez* teaches that when a trial judge, either *sua sponte* or at the prosecutor's request, declares a mistrial without the defendant's consent, a retrial is barred unless "manifest necessity" required the mistrial or "the ends of public justice would otherwise be defeated." *Id.* at 580.

Although the Supreme Court has consistently refused to pronounce general rules delineating when the "manifest necessity" standard has been met, *see, e.g., Illinois v. Somerville*, 410 U.S. 458, 462–64, 93 S.Ct. 1066, 1069–71, 35 L.Ed.2d 425 (1973), and has said that "[e]ach case must turn on its facts," *Downum v. U.S.*, 372 U.S. 734, 737, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), there are certain principles which are applicable with respect to the "manifest necessity" doctrine. Thus it has repeatedly been invoked to permit retrial after a jury has deadlocked. *See, e.g., Richardson v. U.S.*, 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984) ("retrial following a 'hung jury' does not violate the Double

---

**1.** Under 28 U.S.C. § 1826(a), there must be a "refusal" to "comply with an order of the court to testify" and this refusal must occur in a *"proceeding* before or ancillary to any court or grand jury" (*emphasis added*). *See U.S. v. Johnson,* 736 F.2d 358, 360 (6th Cir.1984) (district court without power to hold potential witness in civil contempt before trial started, before witness called to testify, and before present refusal to testify).

**2.** While I originally set the retrial for August 5, 1986 the parties have agreed to adjourn the trial *sine die.* Both sides have indicated that an appeal will follow the resolution of this motion.

Jeopardy Clause"); *U.S. v. Glover*, 731 F.2d 41, 46 (D.C.Cir.1984) (*"hung jury has remained 'prototypical example' of manifest necessity to declare a mistrial"*) (*citations omitted*). Courts also have invoked "manifest necessity" to grant retrials when a possibility of bias, or undue pressure on a jury, exists. *See, e.g., Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978) (manifest necessity demonstrated when defense attorney made improper and prejudicial remarks during opening statement); *Reinstein v. Superior Court*, 661 F.2d 255, 257 (1st Cir.1981), *cert. dismd*, 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982) (manifest necessity shown when jurors may have seen inflammatory and inadmissible advertisement published by defendant's family and friends).

The question before me, however, presents a different issue: whether retrial is permitted after a mistrial due to the unavailability of a prosecution witness, where the unavailability was not caused by any action or failure to act on the part of the government, and where the witness's unavailability was apparently coerced. In addressing the question, the parties have identified two cases which they believe squarely govern the case before me. I turn to those cases and consider their implications.[3]

Defendant Khait relies upon *Downum v. U.S.*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). In *Downum*, defendant was charged with mail theft and forgery of government checks. On April 25, 1961 his trial commenced. A jury was selected and sworn, and instructed to return at 2 p.m. When it returned, the government requested that the jury be discharged because the government's key witness—the payee on the allegedly forged checks—was not present. Defendant then moved to have certain counts dismissed for failure to prosecute and asked that the trial other-

wise continue. The court denied his motion, and discharged the jury over his objection. Two days later, the case was called again and a second jury was empaneled. Defendant argued that this retrial should be barred on double jeopardy grounds. His argument was rejected, a trial was held and he was convicted, and the Court of Appeals affirmed.

In a 5-to-4 decision the Supreme Court reversed, holding that the Double Jeopardy Clause barred retrial. Justice Douglas, writing for the majority, adopted the reasoning of *Cornero v. U.S.*, 48 F.2d 69 (9th Cir.1931), where the Ninth Circuit had sustained a plea of double jeopardy:

> "The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses."

*Downum*, 372 U.S. at 737–38, 83 S.Ct. at 1035, quoting from *Cornero v. United States*, 48 F.2d at 71.

The Supreme Court found the critical facts to be that *Downum* was one of a dozen cases set for call, involving approximately 100 witnesses. Subpoenas for all of them, including the witness in question at Downum's trial, had been delivered to the marshal for service. One day before the case was first called, the prosecutor's assistant checked with the marshal and discovered that the key witness's wife would let him know where her husband was, if she could find out. No word was received from her and no follow-up was made. The prosecution thus allowed the jury to be selected and sworn even though the key witness was absent and had not been

---

**3.** As a matter of law jeopardy attached with the swearing of the jury. The Supreme Court has said, however, that "in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973).

found. The upshot, as Justice Douglas observed, was that "[t]he jury first selected to try petitioner and sworn was discharged because a prosecution witness had not been served with a summons and because no other arrangements had been made to assure his presence." 372 U.S. at 737, 83 S.Ct. at 1035.

Defendant argues that *Downum* controls this case in that here, just as in *Downum,* the prosecution knew that its essential witness would be unavailable to testify yet proceeded to select and empanel a jury. On this basis, he claims that the "manifest necessity" doctrine is not satisfied and the Double Jeopardy Clause bars retrial.

The government distinguishes *Downum* on the ground that there the government was at fault by failing to arrange for the witness's presence, whereas in this case the government had no control over Granik's last minute refusal to testify. It relies on *U.S. v. Mastrangelo,* 662 F.2d 946 (2d Cir. 1981), *cert. den.* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982), in which the Second Circuit held that the trial court judge properly declared a mistrial after the killing of the government's only witness against the defendant. "The killing occurred on the witness's way to the courtroom to testify in a trial in which the Government's case against the co-defendant ... was essentially complete." *U.S. v. Mastrangelo,* 662 F.2d at 947. Defendant Mastrangelo, conceding that if he had killed or arranged for the killing of the witness then a finding of manifest necessity would be warranted, argued that there had been no hearing on the question and no evidence presented other than the government's representation about what had occurred. The essence of his argument, as construed by the Second Circuit, was that "without an actual showing of the defendant's complicity in the death of the witness, the court could not make a finding of manifest necessity." *Id.* at 951.

The Second Circuit concluded that it would have been impracticable to hold a hearing and suspend the trial; to hold a hearing would have delayed the trial to an extent that would in itself have necessitated the declaration of a mistrial:

> ... [T]he test must be simply whether at the time the trial judge is faced with the question he reasonably concludes that there is a distinct possibility that the defendant participated in making the witness unavailable, at least where, as here, the Government is totally without fault and the case cannot proceed and the ends of justice be served by the evidence already introduced or otherwise available to the Government.

*Id.* at 952.

The government here argues that Khait's contentions are essentially identical to Mastrangelo's, and should also be rejected. It claims ample basis for suspicions that Khait caused the threats to Granik, and invokes *Mastrangelo* for its position that no factual hearing is necessary to inquire into these suspicions.

Defendant Khait attempts to limit *Mastrangelo* to its extreme facts, and contends that Granik was only unavailable by his own "volitional refusal" to testify. The government responds that "[w]hether a witness is murdered or 'merely' threatened with murder, the impact on the trial is identical: a silenced witness."

I conclude that the instant case is more like *Mastrangelo* than *Downum.* The mistrial in *Downum* was caused, essentially, by prosecutorial misfeasance. The Supreme Court in *Illinois v. Somerville,* 410 U.S. 458, 469, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973), characterized *Downum* as a case "where the mistrial entailed not only a delay for the defendant, but also operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." The witness was unavailable in *Downum* because no service of a subpoena was effected, and no other arrangements were made to assure the witness's presence. The unavailability of the witness in this case, on the other hand, may not be attributed to prosecutorial misconduct or sloppiness. There was no way the government could have predicted that Granik's wife would be threatened the day

before the trial, thus prompting Granik to refuse to testify.

The government did all it could do to ensure that Granik would testify under the circumstances. This is not a case where, in requesting a mistrial, the government seeks a new opportunity to "strengthen" its case, as in *Downum;* rather, the government seeks, in light of the unavailability of its principal witness, to "restructure [its] proof with additional witnesses and with conceivably Boris Granik's grand jury testimony introduced into evidence." *Downum* is inapposite.[4]

The test enunciated in *Mastrangelo* by the Second Circuit is whether at the time the trial judge is faced with the question he reasonably concludes that "there is a distinct possibility that the defendant participated in making the witness unavailable." 662 F.2d at 952. I have so concluded on the facts of this case.

While no evidence was formally adduced by the government to link defendant Khait to the alleged threats to Granik's family, it is a fact that the threats and coercion which purportedly took place on March 2, 1986 were virtually identical to some of the charges alleged in the indictment. Moreover, as I indicated on the record at the trial, Khait is the only one who would benefit from making these threats.

Nothing before me suggests that even if Khait himself did not make the threats, that he did not put someone up to making those threats. In any event, all that I need conclude at this time is that there was a "distinct possibility." There is no doubt that there is the possibility if not the probability that Khait made these threats, or caused them to be made. Thus, this case is like *Mastrangelo* to the extent that it is a case where the possible conduct of defendant necessitated the early termination of the trial. On the basis of *Mastrangelo* I reject defendant's argument that a factual

hearing is necessary to resolve the issues before me.

### IV.

One court has said that "[t]he problem of moving from the general formulation in *Perez* to the facts of an individual case is complicated by the absence of any rigid rules, which makes categorization of earlier cases extremely difficult." *McNeal v. Hollowell*, 481 F.2d 1145, 1149 (5th Cir. 1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974). The categorization of *Perez, Downum*, and *Mastrangelo* is no less difficult. It is clear that under the "manifest necessity" standard, the government "bears the 'heavy' burden of showing a mistrial to have been demanded by a 'high degree' of necessity." *U.S. v. Kwang Fu Peng*, 766 F.2d 82, 85 (2d Cir. 1985), *citing Arizona v. Washington*, 434 U.S. 497, 505–06, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978). What is before me, however, is sufficient to demonstrate that defendant Khait's "valued right to have his trial completed by a particular tribunal must ... be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *Accord Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *U.S. v. Glover*, 731 F.2d 41, 45 (D.C.Cir.1984).

My ruling here does not disregard the general proposition that "[r]etrial is not permitted after a mistrial due to unavailability of prosecution witnesses or evidence ... except in extraordinary circumstances." Project, *Fifteenth Annual Review of Criminal Procedure; United States Supreme Court and Courts of Appeals 1984–1985*, 74 GEO.L.J. 499, 728 (1986). It merely recognizes this set of facts to constitute "extraordinary circumstances." To find otherwise would lead to a "catch–22" situation for the government: the government has to have a jury sworn before it can

---

**4.** The Supreme Court in *Downum* expressly declined to hold that the absence of witnesses would never justify a mistrial, thus effectively limiting its decision to the facts. 372 U.S. at 737, 83 S.Ct. at 1035. *See* Note, *Mistrials Arising from Prosecutorial Error: Double Jeopardy Protection*, 34 STAN.L.REV. 1061, 1077 n. 92 (1982) (discussing *Downum* ).

have a recalcitrant witness held in civil contempt; yet in having the jury sworn jeopardy attaches. Such a scenario would invite defendants to threaten, coerce, or otherwise intimidate principal government witnesses in order to avoid trial. The Second Circuit recognized these problems in *Mastrangelo* in reaching its decision that a reprosecution was not barred. The facts before me mandate the same conclusion.[5]

SO ORDERED.

---

5. This memorandum order constitutes a final decision on defendant's claim of the bar of the Double Jeopardy Clause: it is therefore appealable under the collateral order exception of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Abney v. United States,* 431 U.S. 651, 656–662, 97 S.Ct. 2034, 2038–42, 52 L.Ed.2d 651 (1977).

The time between now and the return of this case from the Court of Appeals (or between now and the date on which defendant notifies me that he does not intend to pursue an appeal) is excluded in the interests of justice, from the running of the speedy trial clock.