OPINION OF THE COURT
Lawrence J. Tonetti, J.
After a jury was sworn, the court granted a mistrial due to *864 the unavailability of an essential prosecution witness. Does the 5th Amendment’s double jeopardy provision bar any further prosecution where the court has contributed to the unavailability of said witness by its refusal to grant a material witness order? For the reasons set forth in the following opinion, the court determines that double jeopardy does not apply.
THE FACTS
The defendant, Benjamin Di Marco, was indicted on September 18, 1985 for a murder allegedly committed on December 8, 1984. On October 8, 1986, jury selection commenced. On this same date, the Assistant District Attorney, Charles Siegel, informed the court that his principal witness, one Patrick Labate, had appeared in his office the day before and expressed reluctance to testify as a result of fear for his safety. Mr. Siegel informed the court of the potential need for a material witness order (CPL 620.10). The court directed the Assistant District Attorney to ascertain if Mr. Labate would come in voluntarily, and if he would not, to make the appropriate application (CPL 620.30). Jury selection then continued but was intentionally not completed on October 8, 1986, and the case was then adjourned until October 10 to see if Mr. Labate would appear. When court reconvened on October 10, Mr. Siegel informed the court that Mr. Labate had not appeared and applied to the court for a material witness order. The court being satisfied that the application was well founded signed the order (CPL 620.30 [2] [a]), and believing that Mr. Labate was unlikely to respond to the order, issued a warrant directing that Mr. Labate be brought before the court forthwith (CPL 620.30 [2] [b]). In the morning of October 10 the warrant was executed upon Mr. Labate. On the same day jury selection was completed, the jury sworn, and the case adjourned to October 15. In the afternoon of October 10, Mr. Labate was arraigned on the order and a hearing was conducted.
At the hearing Mr. Labate was represented by counsel, Mr. James Matar ano, who appeared at the behest of the court, having represented Mr. Labate in prior proceedings. Mr. Labate stated that he was a long-time resident of the community living with his family. He further represented that he understood that he must testify in the case and that he would come to court as directed, and in fact had no place to run. Mr. *865 Matarano stated that he knew Mr. Labate and his family from his prior representation, and believed Mr. Labate would honor the directives of the court. The court, impressed with Mr. Labate’s sincerity, and knowing that before Mr. Labate would be called upon to testify the Columbus Day weekend and the court’s calendar day would intervene, was reluctant to incarcerate a witness for a four-day period. Given Mr. Labate’s assurances that he would return, the court determined that the People had failed to meet their burden by a preponderance of the evidence that Mr. Labate would not be amenable to subpoena and declined to sign the order (CPL 620.50 [1] [a]; [2]). The court directed Mr. Labate to appear on October 14, 1986, and the District Attorney issued a subpoena to that effect.
On October 14 Mr. Labate did not return. Upon inquiry by the District Attorney, it was determined that his mother had filed a missing person report on the evening of October 10. The People then began an intensive search for Mr. Labate by convening a Grand Jury, issuing subpoenas to witnesses, and assigning police officers to search all possible locations.
On October 15, the date set for resumption of the trial, the court advised the jury that the case could not continue and inquired as to what inconvenience would be caused if they were to be reconvened one week from that date. When the jury agreed to continue, this procedure was followed. An identical procedure was followed twice more over the course of a month until November 10, 1986. At this point the court determined that in view of the fact that Mr. Labate’s location was still unknown and all current leads had been exhausted, the jury could not be held forever. Thus, after denying the People’s motion for a further continuance, a mistrial was granted.
After the discharge of the jury, a hearing was held to detail the People’s efforts to find Mr. Labate. This testimony demonstrated a thorough investigation for the missing witness. The detectives inquired at every location the witness was known to frequent; they checked with correctional facilities, hospitals and medical examiners in the metropolitan area; and sent out wanted posters to all precincts and street locations in the area of his home. Further, á Grand Jury had been convened and had questioned many of Mr. Labate’s friends and relatives as to his whereabouts. Finally, leads had been followed to Atlantic City, New Jersey, where a stakeout proved futile. At the conclusion of the hearing, the court was satisfied that the *866 People had exhausted all avenues in their search for Mr. Labate, and that he could not, and, in fact, has still not been located.
THE LAW
It is clear that once the jury has been sworn jeopardy has attached (Illinois v Somerville, 410 US 458; Crist v Brest, 437 US 28; CPL 40.30 [1] [b]). Absent defendant’s consent, or misconduct, if a mistrial is then declared, the defendant can be retried only where the declaration of a mistrial was "manifestly necessary” or the "ends of public justice would otherwise be defeated” (Matter of Colcloughley v Johnson, 115 AD2d 58; People v Michael, 48 NY2d 1; United States v Perez, 9 Wheat [22 US] 579; Matter of Nolan v Court of Gen. Sessions, 11 NY2d 114). Further, the burden of demonstrating manifest necessity is on the prosecution and is characterized as a "heavy one” (Arizona v Washington, 434 US 497, 508; Matter of Dickson v Morgenthau, 102 AD2d 168, 171). The validity of the claim of manifest necessity will be subject to "the strictest scrutiny” on appeal (Matter of Respeto v McNab, 90 AD2d 308, affd 60 NY2d 739; Arizona v Washington, supra, at 508; Hall v Potoker, 49 NY2d 501; Matter of Enright v Siedlecki, 59 NY2d 195). This scrutiny is to be directed at whether the prosecution by misconduct has caused the mistrial in order to gain " 'a more favorable opportunity to convict’ ” (Arizona v Washington, supra, at 508-509, n 25, quoting Downum v United States, 372 US 734, 736; Hall v Potoker, 49 NY2d 501, 506, supra). Additionally, the court must explore all other appropriate alternatives before the mistrial is declared (Matter of Colcloughley v Johnson, 115 AD2d 58, supra; Matter of Ziegler v Morgenthau, 99 AD2d 989, 991 [Alexander, J., dissenting], revd on dissent of Alexander, J. 64 NY2d 932; Matter of Dickson v Morgenthau, 102 AD2d 168, supra; Matter of Respeto v McNab, 90 AD2d 308, supra).
Applying these legal principles to the facts at hand, it is clear that the unavailability of the witness was not an event within the control of the prosecutor nor due to any misconduct on his part (Hall v Potoker, supra, at 506; Arizona v Washington, supra, at 508, n 24). To whatever degree the disappearance of the witness was a foreseeable contingency (Hall v Potoker, supra, at 506), the District Attorney acted to prevent this contingency, and his judgment was overruled by the court. Simply put, if the court had signed the material *867 witness order on October 10, as requested, the witness would have been present to testify on October 15. Clearly then, this mistrial was not caused by a prosecutor seeking to gain "a more favorable opportunity to convict”. After the disappearance of the witness, the court adjourned the case three times for a period of one month while the People conducted an exhaustive search for the witness. Only when it became apparent that there was no foreseeable time at which the trial could continue, did the court declare a mistrial. In the view of the court, this action was manifestly necessary under the circumstances of this case.
DISMISSAL ON SPEEDY TRIAL GROUNDS
The defendant further moves this court to dismiss on speedy trial grounds. As this homicide case is not within the purview of CPL 30.30, the court must weigh the factors enumerated in People v Taranovich (37 NY2d 442), namely: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there was an extended pretrial incarceration; and (5) whether the defense has been impaired or prejudiced by the delay (see also, Barker v Wingo, 407 US 514). On balance the court finds the motion premature. The reason for the delay, the nature of the underlying charge, the fact that the defendant has been paroled since Mr. Labate’s disappearance, and the failure of the defense to assert any specific prejudice, all militate against granting dismissal on speedy trial grounds at the present time. Obviously, if the witness continues to be unavailable, a time will come when the length of delay will outweigh all other considerations and require a dismissal of the indictment.
For the foregoing reasons the motion to dismiss the indictment is in all respects denied.