LONG, Presiding Judge.
The State of Alabama filed this petition for a writ of mandamus requesting us to *915 direct Judge Robert Kendall, circuit judge for the Thirteenth Judicial Circuit, to vacate the order granting Carroll H. Sullivan’s motion to dismiss the perjury charge against him.[1] Sullivan had been indicted for first-degree perjury by the Mobile County grand jury that was convened in October 1998. Sullivan’s trial was scheduled to begin on March 1, 1999, before Judge Chris Galanos. On that date a jury was empaneled and sworn, the attorneys made their opening statements, and court was then adjourned for the evening. The next morning the State called its first witness, Wayne Zimlich.[2] After a lengthy discussion with the trial court, Zimlich invoked his Fifth Amendment right to remain silent. The State immediately moved for a mistrial. Judge Galanos granted the motion and informed Sullivan that he could file a motion to dismiss the charge on the ground that to try him again would violate principles of double jeopardy. Sullivan moved to dismiss. After a hearing, Judge Galanos ruled that jeopardy had attached and, therefore, that a retrial was barred. Judge Galanos found that there was no manifest necessity for a mistrial; thus, he held, a retrial was barred on the principles of double jeopardy. The State filed a notice of appeal pursuant to Rule 15.7, Ala. R.Crim.P., which governs pretrial appeals by the State. We dismissed the appeal on July 2, 1999, holding that the State had no right to appeal the ruling, which was made after jeopardy had attached. State v. Sullivan, 741 So.2d 1125 (Ala.Cr.App.1999). The State then petitioned for a writ of mandamus challenging Judge Galanos’s ruling.
This Court’s opinion dismissing the direct appeal in this case also stated that the State was not without a remedy to seek review of Judge Galanos’s ruling.
“The appellate courts of this State have frequently stated that a petition for a writ of mandamus is the proper remedy when there is no other relief available. See Rule 21, Ala.R.App.P. Ex parte Weeks, 611 So.2d 259 (Ala.1992); Ex parte Johnson Land Co., 561 So.2d 506 (Ala.1990); Ex parte Taylor Coal Co., 401 So.2d 1 (Ala.1981); Ex parte Hutto, 720 So.2d 1051 (Ala.Cr.App.1998).”
741 So.2d at 1127. This case is properly before this Court by way of a mandamus petition.
The facts surrounding the case were set out by this Court in an opinion issued in response to a mandamus petition filed by Wayne Zimlich, Sullivan’s codefendant and the witness who invoked the Fifth Amendment at Sullivan’s trial. See Ex parte Zimlich, [Ms. CR-98-1612, June 10, 1999] — So.2d-(Ala.Cr.App.1999). As we stated in that case:
“This complicated case arose after a female patient died during a surgical procedure in 1993. Her family filed a medical malpractice action, and in 1995 the case was tried in the Circuit Court for Mobile County. Zimlich, the nurse anesthetist present during the operation, testified at the trial. Zimlich was later indicted for perjury after he admitted that his testimony was false. Zimlich states in the petition to this Court that he ‘became a whistle-blower in that he admitted that he was coerced into giving false testimony by the insurance company, employees of the insurance company, his doctor-employer, and the defense attorney for the insurance company....’”
— So.2d at-.
The State first argues that Judge Gala-nos erred in granting the motion to dismiss because Sullivan had consented to the mistrial; thus, it argues, he waived any double jeopardy claim. It further argues that, even if Sullivan did not consent to the mistrial, the State met its burden of prov *916 ing that “manifest necessity” existed for the mistrial.
This Court in Cox v. State, 585 So.2d 182 (Ala.Cr.App.1991), cert. denied, 503 U.S. 987, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992), stated the following:
“The Double Jeopardy Clause 'protects a defendant’s ‘valued right to have his trial completed by a particular tribunal.’ United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). A defendant may waive this protection by requesting or by consenting to a mistrial before a verdict is rendered. See United States v. Dinitz, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079-80, 47 L.Ed.2d 267 (1976); United States v. Jorn, 400 U.S. at 485, 91 S.Ct. at 557. If, however, the defendant does not consent to a mistrial, he may still be retried without running afoul of the Double Jeopardy Clause, if there is a ‘manifest necessity’ for a mistrial. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). The Supreme Court cautioned that the phrase ‘manifest necessity’ cannot be interpreted literally; only a ‘high degree’ of necessity is required before concluding that a mistrial is appropriate. Arizona v. Washington, 434 U.S. at 506, 98 S.Ct. at 831. ‘Manifest necessity for a mistrial is not determined by whether in fact the event precipitating the mistrial did influence the juror, but whether it might have unlawfully influenced the juror.’ Woods v. State, 367 So.2d 982, 984 (Ala.1978).”
(Emphasis original.)
In Stevenson v. State, 404 So.2d 111 (Ala.Cr.App.1981), this Court set out the basis for the rationale that a defendant’s consent to a mistrial waives any double jeopardy argument upon retrial.
“In United States v. Bobo, [586 F.2d 355 (5th Cir.1978) ], the U.S. Fifth Circuit in referring to the former jeopardy rule stated:
“‘By contrast, where the defendant moves for a mistrial or consents to its declaration, ordinarily the double jeopardy clause does not bar his retrial. United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); Lee v. United States, 432 U.S. 23, 32, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); United States v. Crouch, 566 F.2d 1311, 1317 (5th Cir.1978).’
“The theory for applying this exception in federal cases is that a defendant who moves for a mistrial consents to a termination of the present trial and impliedly consents to a retrial. United States v. Brooks [599 F.2d 943 (10th Cir. 1979) ]. The defendant, though he has a ‘valued right’ to a speedy trial and against multiple prosecutions, has a comparable right to seek or suggest a termination of the present trial, to take the case from a jury when circumstances occur that might prejudice his case. United States v. Dinitz, [424 U.S. 600, 96 S.Ct. 1075 (1976)]. The evils that the double jeopardy bar seeks to prevent, therefore, vanish when the defendant induces the dismissal of the existing prosecution.
“We would point out that all double jeopardy eases should be carefully examined to assure protection of defendants’ rights. However, defendants should not be allowed to induce error and thereby possibly escape prosecution by manipulation of the court under the guise of ‘double jeopardy’ protection.”
404 So.2d at 114. “ ‘[CJonsent may always be implied form the totality of circumstances attendant on the declaration of a mistrial.’ ” State v. Tiger, 972 S.W.2d 385, 389 (Mo.App.1998). See also Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).
*917 Here, the record reflects that when the prosecutor requested a mistrial, after its main witness—Zimlich—refused to testify, Sullivan moved to dismiss the charge with prejudice. Sullivan’s counsel stated:
“Judge, for the record, no one in this courtroom is unaware of the significance of this case, not only to my client but this community. He has been charged and still has this matter hanging over him, given the Court’s ruling. I would again urge the Court in view of these developments to not declare a mistrial but enter an order of dismissal. The jury has been empaneled and as Your Honor well knows, jeopardy has attached.”
It does not appear that Sullivan consented to the mistrial. In fact, Sullivan twice requested that the charges against him be dismissed.
Because Sullivan did not consent to the mistrial, we are left to determine whether the mistrial was a “manifest necessity.” A defendant may be retried, even if he did not consent to a mistrial, if there exists a “manifest necessity” for a mistrial. The standard of review when determining whether “manifest necessity” exists was explained by this Court in Ex parte Whirley 530 So.2d 865 (Ala.1988), quoting Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978),
“ ‘The words “manifest necessity” appropriately characterize the magnitude of the prosecutor’s burden. For that reason Mr. Justice Story’s classic formulation of the test has been quoted over and over again to provide guidance in the decision of a wide variety of cases. Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word “necessity” cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a “high degree” before concluding that a mistrial is appropriate.’
“434 U.S. at 505-06, 98 S.Ct. 824 (footnotes omitted).”
Judge Galanos, in his order granting Sullivan’s motion to dismiss, stated that the prosecutor had not adequately “prepared” the witness and had had reason to believe that the witness would not testify. He stated that four weeks before trial Zimlich had indicated that he would not be willing to testify at Sullivan’s trial. However, the findings of the trial court are not supported by the record filed with this mandamus petition. At the hearing on the motion to dismiss, the prosecutor testified that he had met with Zimlich and his attorney several times before trial and after Zimlich’s grand jury testimony and that Zimlich had indicated a hesitancy to testify. He further stated that two or three weeks before trial he had talked with Zimlich’s attorney and the attorney had informed him that Zimlich was ready and willing to testify at Sullivan’s trial. Also, on the day Sullivan’s jury was struck Zim-lich indicated to him that he wanted to testify. The prosecutor further testified that he was surprised when Zimlich refused to testify because the State and Zim-lich had an agreement that if he testified truthfully the State would not use his testimony against him. The prosecutor stated,
“After he took the Fifth there wasn’t anything that we could do. The other witnesses were here or on the way. The problem is there is a statutory requirement under the laws of Alabama for perjury when the State goes to prove it that you have either two witnesses to the falsity of the statement or one witness in strong corroboration. I had a number of witnesses as to the corroboration, but he was the only witness as to the falsity of it. And without his testimony I could not go forward.”
Judge Galanos also stated in his order that the fact that the prosecutor may have had a suspicion that Zimlich would refuse to testify indicated that there was no mani *918 fest necessity for moving for a mistrial. The prosecutor’s suspicion that Zimlich would not testify, alone, does not support prosecutorial misconduct. Judge Gala-nos’s legal conclusions contradict caselaw.
The Superior Court of New Jersey, Appellate Division, in State v. Dunns, 266 N.J.Super. 349, 371-73, 629 A.2d 922, cert. denied, 134 N.J. 567, 636 A.2d 524 (1993), gave a detailed synopsis of the law on double jeopardy when a critical State’s witness refuses to testify and the State is forced to move for a mistrial. The Dunns court stated:
“Essentially, the general rule is that if the prosecutor was not in some way responsible for the witness’s unavailability, manifest necessity exists for mistrial, so long as the witness is essential to the State’s case and the judge’s ruling is not otherwise an abuse of discretion.... “Citing to Downum [v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) ], the Nevada Supreme Court has stated, ‘[i]f the prosecutor is in some way responsible for the unavailability of a critical prosecution witness, then a manifest necessity for mistrial is not established.’ State v. Connery, 100 Nev. 256, 679 P.2d 1266, 1267 (1984). In that case, the State’s key witness, the victim of the crime, attempted suicide the night before the day trial was to start and was unavailable to testify. The State requested a continuance and in the alternative a mistrial. The judge granted a mistrial over defendant’s objection. The Nevada Supreme Court held that, because the prosecutor was in no way responsible for the witness’s absence and the State would be effectively prevented from presenting its case without her testimony, there was manifest' necessity for the mistrial and a retrial was not barred. Id., 679 P.2d at 1268; see People v. Dimarco[Di Marco], 134 Misc.2d 863, 512 N.Y.S.2d 1004 (Sup.Ct.1987) (mistrial was manifestly necessary where witness disappeared, prosecutor’s office conducted an extensive search, and judge granted several continuances to allow for the search to continue). But see Commonwealth v. Ferguson, 446 Pa. 24, 285 A.2d 189, 191 (1971) (no manifest necessity where key witness to robbery reportedly was ill and unavailable to testify; granting a continuance a better alternative so that severity of illness could be determined). In United States ex rel. Gibson v. Ziegeler[Ziegele], 479 F.2d 773, 775 (3d Cir.), cert. denied, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973), a key witness became too ill to testify after trial began; because the illness would keep the witness unavailable for two weeks or more, the judge granted the prosecutor’s motion for mistrial. The Third Circuit held that retrial was not barred because the witness’s testimony was essential for the State’s case and the illness was unexpected. Id. at 777; see United States v. Gallagher, 743 F.Supp. 745, 749 (D.Or.1990) (manifest necessity exists where key witness unexpectedly refused to testify after placed on the stand).
“The facts of the case before us are somewhat similar to those in United States v. Shaw, 829 F.2d 714 (9th Cir. 1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988). In Shaw, the first trial ended in a mistrial when it became apparent that the main prosecution witness would refuse to testify. The key witness in Shaw, on the day before trial, advised the judge that she would invoke her privilege against self-incrimination. The trial began before the prosecution was able to obtain immunity for the witness. On the second day of trial, immunity was approved and the judge entered an order compelling the witness to testify. Id. at 719. However, the witness still refused to testify, and the prosecution moved for a mistrial. The judge granted the motion over defense objection. The Ninth Circuit found that the judge exercised sound discretion in granting the mistrial on the grounds of manifest necessity because the possible bias to the government’s case created by defense counsel’s adverse references to the witness during opening statements could not be effec *919 tively rectified. Id. at 720. Also, and more pertinent to our case, the Ninth Circuit noted that there was ‘no evidence of undue delay or negligence in the government’s failure to obtain immunity for [the witness] before trial. The prosecutor acted to obtain immunity for [the witness] as soon as he learned that she would refuse to testify.’ Ibid. Double jeopardy doctrine did not bar a retrial.
“In United States v. Khait, 643 F.Supp. 605 (S.D.N.Y.1986), another similar case, the District Court held that reprosecution was not barred where a mistrial was declared as a result of an essential witness’s refusal to testify because of death threats, even though the government knew before the jury was sworn that the witness probably would not testify. In Khait, the government’s key witness informed the judge on the day that jury selection began that his wife had received death threats and that he would refuse to testify if called. The next day the government said that it would seek a civil contempt order against the witness if he refused to testify. The jury was then sworn, and upon the witness’s continued refusal to testify, the judge found him in contempt and ordered him incarcerated. The trial was adjourned for three weeks. When the trial reconvened, the witness continued his refusal to testify and the judge released him, reasoning that any further incarceration would not serve a coercive purpose. The government requested and obtained a mistrial. The defendant then moved for dismissal of the indictment on double jeopardy grounds, claiming that no manifest necessity existed because the government knew its main witness would not be available and yet willingly proceeded to participate by the empanelment of a jury.
“The District Court rejected the defendant’s contention, noting that the ‘unavailability of the witness in this case ... may not be attributed to prosecuto-rial misconduct or sloppiness.’ Id. at 608.”
This case presents similar facts to those presented in United States v. Khait, 643 F.Supp. 605 (S.D.N.Y.1986). There is absolutely nothing in the record that suggests that the prosecutor was at fault for Zimlich’s failure to testify. Judge Galanos erred in holding that there was no manifest necessity for declaring a mistrial; therefore, he should not have granted Sullivan’s motion to dismiss the perjury charge. The Double jeopardy Clause does not bar Sullivan from being retried on the perjury charge.
“The prosecutor did not deliberately overreach the defendant with the threat of multiple prosecutions, nor intentionally subvert the defendant’s right to be tried only once. Accordingly, the extraordinary remedy of discharge is not warranted in this case, and we hold that appellant’s double jeopardy rights would not be violated by retrial.”
Commonwealth v. Simons, 342 Pa.Super. 281, 294-95, 492 A.2d 1119 (1985).
Before a writ of mandamus may issue, four requirements must be met. There must be (1) no adequate remedy at law; (2) a clear legal right in the petitioner to the relief sought; (3) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; and (4) the properly invoked jurisdiction of the reviewing court. Ex parte Department of Human Resources, 620 So.2d 619, 620 (Ala.1993).
The State has satisfied all of the above-stated requirements. For the reasons stated above, this petition for a writ of mandamus is granted. Judge Kendall is directed to vacate the order granting Sullivan’s motion to dismiss the charge against him.
PETITION GRANTED.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.

. Judge Chris Galanos ruled on the motion originally. The case was referred to Judge Kendall after Judge Galanos resigned from the bench in May 1999.

. Zimlich, Sullivan’s codefendant, was also indicted for peijury in the first degree.