UNITED STATES of America, Plaintiff-Appellee,

v.

David J. SHAW, Defendant-Appellant.

Nos. 86–3056, 86–3057.

United States Court of Appeals, Ninth Circuit.

Argued * and Submitted Nov. 3, 1986.

Decided March 16, 1987.

* Only CA 86–3057 was argued.

Jeffrey J. Kent, Eugene, Or., for plaintiff-appellee.

Marianne D. Bachers, Eugene, Or., for defendant-appellant.

Before ANDERSON, HUG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Appellant David James Shaw appeals his conviction, after jury trial, of unarmed bank robbery. He also appeals the denial of his motion to dismiss following a mistrial in a separate prosecution for weapon possession. We affirm both the conviction for unarmed bank robbery and the denial of the motion to dismiss.

On April 18, 1985, a man dressed as a woman robbed the Pacific Western Bank in Eugene, Oregon by threatening to throw a vial supposedly containing acid at a bank teller. On August 1, 1985, appellant David James Shaw was arrested and confessed to the robbery, admitting that he had dressed as a woman and had employed Ronald Smith, a juvenile, as his driver. Shaw also explained that the vial of fluid he used in the robbery contained only water.

The grand jury returned a three count indictment against Shaw on August 15, 1985. Count One charged him with unarmed bank robbery under 18 U.S.C. § 2113(a) (1982). Counts Two and Three charged him with possessing an unspecified type of long arm weapon in April 1985 and a pistol in July 1985 in violation of 18 U.S.C.App. § 1202(a)(1) (1982). The trial judge granted a motion to try Count One separately from Counts Two and Three. Count Two was later dismissed.

In the robbery trial, Shaw was found guilty of unarmed bank robbery after a trial to the jury. Shaw appeals his conviction on the grounds that (1) the prosecutor improperly vouched for the credibility of the government's main witness; (2) the trial judge should have stricken the testimony of a government witness who allegedly gave false testimony; and (3) the trial judge should have suppressed Shaw's confession because it was involuntary.

In the weapon possession trial, the district judge granted a mistrial, over defense objection, after a government witness whose anticipated testimony was described in defense counsel's opening statement refused to testify. The refusal occurred despite a grant of immunity from prosecution. After the mistrial, Shaw moved to dismiss the indictment, contending that retrial would violate the double jeopardy clause of the Fifth Amendment. The district court denied the motion, and Shaw appeals pursuant to *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The two cases were consolidated for appeal.

## A. The robbery trial

Shaw's first contention on appeal from his conviction for unarmed bank robbery is that the government improperly vouched for the credibility of a witness' testimony. In his opening statement, the prosecutor stated that Ronald Smith, Shaw's admitted accomplice and an important government witness, had agreed to testify as part of a plea bargaining agreement:

In addition, you will hear from Ronald Smith himself. You will learn that Ronald Smith, a juvenile, has been charged in the juvenile court of Eugene with robbery. The charges are pending against him. You will learn that we have, basically, agreed, we, meaning the prosecutor and the government have agreed that as long as he is truthful we will present his truthful cooperation to the local prosecutor so they can decide what value it has for the purposes of deciding what to do with his case.

Shaw contends that this reference to Smith's plea-bargaining agreement amounts to improper government vouching for the credibility of the witness.

In *United States v. Roberts*, 618 F.2d 530, 532 (9th Cir.1980), this court held that a prosecutor had improperly vouched for the credibility of a government witness by stating that truthfulness was a condition of the witness' plea agreement and that a government agent was in the audience monitoring the witness' testimony. There we warned that

[a] trial court should be alert to the problem of vouching before admitting a plea agreement containing a promise to testify truthfully. The court should consider the phrasing and content of the promise to ascertain its implications and decide whether an instruction to the jury would dispel any improper suggestion.

*Id.* at 536.

Some of our more recent cases have placed glosses on *Roberts*, however. We have made it clear that references to requirements of truthfulness in plea bargains do not constitute vouching when the references are responses to attacks on the witness' credibility because of his plea bar-

gain. *United States v. Tham,* 665 F.2d 855, 862 (9th Cir.1981) (response to defense argument that plea bargain required witness "not to testify truthfully, but to testify favorably to the government"), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982); *United States v. Brooklier,* 685 F.2d 1208, 1218 (9th Cir. 1982) (plea agreement properly admitted to rebut defense references to witness as "a perjurer, paid informant, and murderer who escaped the death penalty by cooperating with the FBI"), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983); *United States v. Rohrer,* 708 F.2d 429, 433 (9th Cir.1983) (agreement properly admitted in response to "extensive impeachment" of witness' motives and "discussion of part of the agreement").

The present case differs from *Tham, Brooklier* and *Rohrer* because here the prosecutor called the jury's attention to the plea agreement and its requirement of truthful testimony in his opening statement. The government argues, however, that those three cases establish that it is permissible to focus on the terms of the agreement, including its requirement of truthful testimony, as a factor motivating the witness. *See, e.g., Rohrer,* 708 F.2d at 433. If such references do not constitute vouching when offered in rebuttal, the government contends, they do not become vouching simply because the government anticipates a defense attack on the credibility of its witness.

There is some logic to the government's argument, but we cannot accept it in its entirety. As we recognized in *Roberts,* every plea agreement that contains a requirement of truthful testimony contains an implication, however muted, that the government has some means of determining whether the witness has carried out his side of the bargain. *See Roberts,* 618 F.2d at 536. While *Tham, Brooklier* and *Rohrer* held it proper to refer to or introduce such plea agreements in rebuttal to an attack on credibility, those decisions do not necessarily legitimize the introduction of a requirement of truthfulness by the prosecution before any issue of credibility has

been drawn. "Although ... plea agreements are admissible on the issue of bias, they are not to be used as a basis for supporting the truthfulness of the witness' testimony." *Brooklier*, 685 F.2d at 1218. When the prosecution refers, as it did here, to the requirement of truthfulness before the issue of bias is drawn, it runs the risk that its reference will be interpreted as an attempt to establish truthfulness and suggest verifiability.

We agree, however, with the government that what was said is more important than when it was said, at least in a case such as this one where an attack on the witness' credibility was almost certain to be forthcoming. The government stresses that it referred to no extra-record facts, unlike the prosecutor in *Roberts*, who told the jury that a detective in the courtroom was monitoring the witness' testimony. That reference clearly suggested to the jury that the detective knew whether the witness was telling the truth and would see that he did. As the government points out, we have subsequently stated that this extra-record reference to verification was the critical factor causing reversal in *Roberts. Tham,* 665 F.2d at 862; *Brooklier*, 685 F.2d at 1218; *Rohrer*, 708 F.2d at 433. Similarly, in *United States v. Brown*, 720 F.2d 1059 (9th Cir.1983), the prosecutor placed before the jury a plea agreement requiring truthful testimony and submission, if asked, to polygraph examinations. The prosecutor then vigorously argued that the witnesses would testify truthfully because of their plea agreement. We reversed the conviction because the prosecutor's actions improperly indicated that extrinsic information and verification supported the witness' testimony. *Id.* at 1072–74.

■ The language used by the prosecutor in the present case was neither as egregiously suggestive as that in *Roberts* and *Brown* nor as sterile as that in *Tham, Brooklier* and *Rohrer*. The prosecutor in his opening statement said of his witness:

> You will learn that we have basically, agreed, we, meaning the prosecutor and the government have agreed that *as long*

*as he is truthful we will present his truthful cooperation* to the local prosecutor so they can decide what value it has for the purposes of deciding what to do with this case.

(emphasis added). The statement does not explicitly refer to any extra-record facts. It describes the agreement in the same terms as the witness himself later did in direct examination. Yet the emphasized words necessarily imply that the prosecution has some method of determining whether the witness' testimony is truthful, so that it will know whether to present the witness' "truthful cooperation" to the local authorities. "[T]he unspoken message is that the prosecutor knows what the truth is and is assuring its revelation." *Roberts*, 618 F.2d at 536. The message is the more clear for coming at the outset of trial, before any issue of bias is presented. In our view, the statement constitutes improper vouching.

■ In light of all the circumstances of this case, however, we do not regard the statement (or the less suggestive testimony of the witness regarding the plea bargain) as cause for reversal. It would have been better if the trial court had given an instruction that the reference to truthfulness in the plea agreement does not mean that the government has a way of knowing that the testimony is truthful. *See Brooklier*, 685 F.2d at 1218–19. But the trial court in this case did instruct the jury that the witness was the beneficiary of a plea bargain, and that the jury should, on that account, examine his testimony with greater caution than that of ordinary witnesses. That instruction was given after the issue of credibility of the witness in light of the plea bargain had been fully joined, and the defendant in summation had forcefully argued that the prosecution had no way of ascertaining whether a witness was telling the truth. In that context, the judge's instruction could only be taken by the jury to mean that the credibility of the witness was by no means established by the plea agreement, and that the issue was wholly

open for the jury to decide.[1] We consequently conclude that it is more probable than not that the vouching did not materially affect the verdict; the error was harmless. *See United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir.1977).

Shaw's second contention on appeal is that the trial judge erred in concluding that a government witness, Belinda Kunkle, was confused rather than intentionally dishonest when she denied during cross-examination that she had asked the prosecutor about reward money in the case. Shaw also suggests that the prosecutor knowingly presented false testimony by failing to clarify adequately the misstatement before the jury.

 A trial judge's findings of fact will be reversed on appeal only if they are clearly erroneous. *United States v. Benny,* 786 F.2d 1410, 1419 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). In the present case, the witness may well have believed that defense counsel was asking her whether she had directly requested reward money, not whether she had inquired about a reward. The trial court did not clearly err in finding that the witness had been confused.

The contention that the prosecutor knowingly presented false testimony is frivolous. It is clear from the record that it was the prosecutor who first brought Kunkle's questions about reward money to defense counsel's attention. It is also clear that Kunkle's inquiry was adequately described to the jury during a second round of cross-examination and redirect examination.

 Shaw's final contention is that his confession after arrest was involuntary and hence inadmissible at trial. Shaw is correct that a statement obtained after *Miranda* warnings are given may be inadmissible if it was made involuntarily. *United States v. Curtis,* 568 F.2d 643, 647 (9th Cir.1978). In the present case, however, we find nothing in the record to indicate that Shaw confessed under duress or

against his will. Shaw may well have been dejected and resigned after his arrest, but those conditions are hardly enough to make his confession involuntary.

## B. The weapon possession trial

Shaw's separate trial for possessing a pistol in violation of 18 U.S.C.App. § 1202(a)(1) (1982) ended in a mistrial once it became apparent that the main prosecution witness, Sharon Rose, would refuse to testify despite her having been granted immunity from prosecution. Rose had appeared through her attorney the day before the trial began and advised the court that she would invoke her Fifth Amendment privilege against self-incrimination in response to any questions posed at trial. After an *in camera* hearing, the court upheld the claim of privilege and continued the proceedings in order to enable the prosecutor to obtain immunity for Rose.

Shaw's trial began on January 22, 1986. Because it was uncertain whether immunity for Rose would be approved, the trial judge prior to opening arguments cautioned the prosecutor not to discuss any facts that could only be presented through Rose's testimony. It is clear from the record that the prosecutor heeded the judge's warning and refrained from discussing Rose's expected testimony. Defense counsel, however, made repeated references to Rose's statements that she, and not Shaw, had possessed the pistol in question; he also suggested that Rose was not a credible witness:

> MS. BACHERS: Ladies and gentlemen, there is a woman named Sharon Rose who Mr. Kent has just discussed with you. Ms. Rose [is] a convicted—or somebody who was going to be convicted of a felony, very soon. She had already pled guilty in court right around the time of these events to some offenses relating to. credibility....

Additionally, the Government may present testimony from a woman named Sharon Rose. You will find out from her that during this period of time she was a

---

1. The trial judge also instructed the jury that the witness' testimony should be considered with

greater caution than that of other witnesses because he testified that he was an accomplice.

drug user. She was using methamphetamine. She used it. She had needles and she used those to inject methamphetamine in her arm during this period of time.

Additionally, her daughter was living with a man who was a methamphetamine dealer. These were matters of concern to her. And her credibility, whatever she has to say, is the central issue in this case. That is something that you will have to consider when you listen to her.

She has made several statements about this case. She has told conflicting stories. She told us that, in fact, this weapon was hers and that the pistol belonged to her and that it did not belong to Mr. Shaw....

Now when the FBI interviewed her she also said that during this time that Mr. Shaw did not possess the weapon....

Ms. Rose has given an extensive interview to my investigator about this case telling him that this weapon belonged to her, that it was in her possession, not Mr. Shaw's....

On the following day, immunity was approved and the trial judge entered an order granting Rose immunity and compelling her to testify. Rose nevertheless refused to testify. The prosecutor then moved for a mistrial on the ground that the jury "has ... been advised of the most favorable evidence that Ms. Rose could provide without any balance regarding the highly incriminating information that she previously testified to before the Grand Jury and to the FBI agents." The trial judge granted the mistrial motion over defense objections, ruling that neither an instruction to the jury to disregard portions of the defense opening statement nor introduction of Rose's grand jury testimony could cure the prejudice to the government's case. Shaw then moved to dismiss the indictment on the ground that retrial would violate the double jeopardy provision of the Fifth Amendment. The judge denied Shaw's motion to dismiss, and Shaw now appeals that denial.

█ The double jeopardy provision of the Fifth Amendment bars retrial of a criminal defendant after a mistrial granted over defense objection unless there is "manifest necessity" for the mistrial. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). The degree of deference accorded to a district court's determination of manifest necessity varies with the circumstances of the case. *Arizona v. Washington*, 434 U.S. at 507–10, 98 S.Ct. at 831–33; *United States v. Jaramillo*, 745 F.2d 1245, 1248 (9th Cir. 1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). In *Arizona v. Washington*, the Supreme Court held that "a trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference." 434 U.S. at 514, 98 S.Ct. at 834–35. Even while according great deference to the trial judge's decision, however, a reviewing court must satisfy itself that the judge used sound discretion in declaring a mistrial. *Id.; United States v. Jarvis*, 792 F.2d 767, 769 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 182, 93 L.Ed.2d 116 (1986).

Shaw contends that there was no manifest necessity for a mistrial, and that retrial is therefore barred by the double jeopardy provision of the Fifth Amendment, because (1) any prejudice could have been cured by jury instructions; (2) defense counsel's statements about Rose were supported by the record, whether or not Rose testified; (3) the mistrial resulted from the government's lack of due diligence; and (4) the government's opening statement invited defense counsel's statements about Rose.

█ We disagree. It is clear from the record that defense counsel's statements about Rose's character and ownership of the pistol had the potential to prejudice the jury against the government's case. It is also clear that the trial judge gave both defense counsel and the prosecutor full opportunity to express their views on the propriety of a mistrial and that he considered both curative jury instructions and the introduction of Rose's grand jury testimony as alternatives to a mistrial. Even if "some trial judges might have proceeded

with the trial after giving the jury appropriate cautionary instructions," we must accord the highest degree of respect to the trial judge's evaluation of the likelihood of juror bias. *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833. We therefore hold that the district judge's decision that potential juror bias justified a mistrial under the manifest necessity standard was an exercise of sound discretion, and that retrial does not violate the double jeopardy clause.

Shaw's arguments to the contrary are not persuasive. First, the trial judge's decision that jury instructions could not cure the prejudice to the government's case is entitled to great deference, and we decline to substitute our judgment for his. Second, it is clear from the record that defense counsel's most prejudicial statements could not have been supported at trial without Rose's testimony. Evidence of a witness' lack of credibility is irrelevant if the witness does not testify, and Rose's statements to FBI and defense investigators would have been inadmissible hearsay.[2] Third, there is no evidence of undue delay or negligence in the government's failure to obtain immunity for Rose before trial. The prosecutor acted to obtain immunity for Rose as soon as he learned that she would refuse to testify. Finally, a careful reading of the prosecutor's opening statement shows that he obeyed the judge's warning to refrain from references to Rose's expected testimony and did not in any way invite defense counsel's prejudicial remarks.

AFFIRMED.

---

**2.** Rose's argument that the statements would have been admissible as admissions against interest under Fed.R.Evid. 804(b)(3) is not persuasive. As the government points out, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). Rose's grand jury testimony that Shaw possessed the pistol would support a ruling that her contrary statements to defense and FBI investigators are not trustworthy and are therefore inadmissible.