## MICHAEL J. DOYLE, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 17848

December 21, 1988                    765 P.2d 1156

*William H. Smith,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Melvyn T. Harmon,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

At approximately 11:15 p.m. on March 21, 1985, the manager of the apartment complex at 2592 Sherwood Street, Las Vegas, discovered the partially clad body of Lois McNally in the alley behind the complex. McNally, a local prostitute, had suffered over seventy stab wounds and her body had been dumped in the alley. An autopsy confirmed that death resulted from the stab wounds.

Fire Department paramedics, who were the first officials to arrive at the scene, discovered a large black wallet lying next to McNally's body. When police inventoried the wallet's contents they found a Utah driver's license issued to Michael J. Doyle and a Nevada Employment Security card that listed Doyle's Las Vegas address. Police detectives contacted Doyle at his residence and obtained permission to search Doyle's vehicle. A search of the vehicle at the police crime lab disclosed a substantial quantity of type B blood, the same blood type as the victim's. In addition, the vehicle search disclosed a motel receipt in McNally's name and a yellow metal necklace that was later identified as belonging to McNally. Thereafter, Robert Leonard, the homicide detective investigating the crime, placed Doyle under arrest for murder with use of a deadly weapon.

Doyle's first two trials ended in mistrials when the juries were unable to reach a verdict. Upon his third trial the jury convicted Doyle of first degree murder with use of a deadly weapon. In a separate penalty hearing the jury imposed a sentence of life with the possibility of parole.

Doyle's principal claims of error involve: (1) the trial court's denial of his request for a continuance in order to obtain evidence with which to impeach an informant; and (2) alleged acts of prosecutorial misconduct.

### The Trial Court's Denial of Doyle's
### Motion for a Continuance

On September 11, 1986, four days prior to Doyle's third trial, the State moved to amend the information and add the name of

Albert Farrar, an informant incarcerated with Doyle. It is undisputed that the State had been aware of the testimony that Farrar would give since early August. The trial court heard and granted the State's motion on September 12. At that time, Doyle moved for a continuance in order to obtain evidence with which to impeach Farrar. The trial court denied Doyle's motion, but ordered the State to provide Doyle with any information it possessed regarding Farrar. Farrar was not called as a witness until September 17th—the third day of trial.

Doyle maintains that the trial court in refusing to grant a continuance in the face of the State's last minute disclosure of its witness denied him assistance of counsel. We disagree.

It is well settled that "[t]he granting of a continuance is within the sound discretion of the [trial] court." Dixon v. State, 94 Nev. 662, 664, 548 P.2d 693, 694 (1978) (citations omitted). Absent the showing of a clear abuse of discretion, the decision of the trial court will not be disturbed. Walker v. State, 89 Nev. 281, 510 P.2d 1365 (1973).

In *Walker* we addressed a similar situation. There, defense counsel learned on a Friday that the State intended to call a rebuttal witness the following Monday. The defense sought a continuance in order to obtain impeachment witnesses; however, the trial court denied the request. In considering whether the trial court had abused its discretion, we noted:

> It has been held that it is not an abuse of discretion to deny a continuance where the testimony sought is to be used for impeachment purposes.

*Id.* at 284, 510 P.2d at 1367 (citing State v. Cotton, 443 P.2d 404 (Ariz. 1968)). After indicating that the defense had "a full weekend to find impeachment evidence," we held that the trial court had not abused its discretion. *Id.*

In the instant case, the trial court granted the prosecution's motion to amend the information and add the name of Farrar three days prior to trial. The trial court ordered the State to produce all information that the State possessed regarding Farrar, and the State did not call Farrar as a witness until the third day of trial. Moreover, Doyle had the benefit of a court-appointed investigator. Under these circumstances, we cannot say as a matter of law that six days was an inadequate time in which to gather evidence to impeach the witness.

Our review of the trial record does not establish that the court's ruling denied Doyle assistance of counsel. The defense on cross-examination brought out Farrar's prior convictions, his history of

being an informer in both the California prison system and in Nevada, as well as his reputation of being a disciplinary problem at the Clark County Detention Center. The defense inquired into the circumstances surrounding Farrar's contacts with Doyle and with the prosecutor's office. The defense also questioned Farrar about past instances where Farrar had lied to authorities and about a report that characterized Farrar as approaching the development of a sociopathic personality, having a limited ego development, and being motivated solely by his own needs and desires.

Still, while we conclude that the trial court, in refusing to grant a continuance, neither abused its discretion nor denied Doyle assistance of counsel, we do not condone the prosecution's failure to reveal its witness until shortly before trial. Prosecutor Harmon had known of Farrar since early August; yet, he did not disclose the witness until September 11.

During oral argument Mr. Harmon attempted to justify his non-disclosure by stating that Farrar, fearing for his safety while at the Clark County Detention Center, had conditioned his testimony for the State upon his California parole being reinstated. When questioned whether he could have relocated Farrar to another detention facility, thus ensuring Farrar's safety, Mr. Harmon admitted that relocation would have been possible, but claimed that budgetary considerations influenced his decision against it.

It is the prosecutor's duty to promptly disclose the names and addresses of his witnesses. Owens v. State, 96 Nev. 880, 882, 620 P.2d 1236, 1238 (1980) (citing NRS 173.045(2)). While Mr. Harmon argued that Farrar was not a prosecution witness until the terms upon which he had conditioned his cooperation had been satisfied,[1] we believe that Mr. Harmon should have informed the defense of Farrar's potential testimony upon learning of it. If fulfilling his obligation to the defense, while at the same time ensuring Farrar's safety, required Mr. Harmon to relocate Farrar at additional expense, the State· should have incurred the costs. Budgetary considerations, while always a factor in criminal prosecutions, are not a sufficient justification for denying an accused the opportunity to gather evidence in order to confront witnesses against him.

---

[1] Our conclusion that the trial court did not abuse its discretion in denying Doyle's motion for a continuance obviates the necessity of our resolving this issue and we decline to express our opinion on it.

## Prosecutorial Misconduct

Doyle contends that Mr. Harmon demeaned a defense surre-buttal witness, Richard Melborn, by threatening reprisal at Melborn's upcoming trial. During cross-examination, Mr. Harmon asked why Melborn was incarcerated. The defense objected and the court sustained the objection. After a difficult and heated cross-examination, the defense counsel heard Mr. Harmon remark "November 17" as Melborn was exiting. Doyle contends, and Mr. Harmon in effect has admitted, that by this cryptic comment Harmon was alluding to Melborn's coming trial, and letting Melborn know Harmon intended to achieve a form of vengeance then by convicting Melborn. Out of the presence of the jury, the defense moved for a mistrial; the court denied the motion.

The remark was indeed uncalled for and improper. During oral argument, Mr. Harmon conceded that his remark was exceedingly unprofessional. Circumstances suggest, however, that the jury did not hear the remark: the remark was apparently inaudible to the court reporter as it does not appear in the record, nor does it appear that the court heard it.[2] Even if the jury heard the remark, we do not believe that a reasonable juror could have inferred anything from the statement that was prejudicial to this appellant. We conclude, therefore, that the trial court did not err in denying Doyle's motion for a mistrial.

---

[2]Out of the presence of the jury, the following exchange occurred:

MR. SMITH: Your Honor, before we begin to settle instructions, I must make a motion which, quite frankly, I regret to make.

But as the witness was leaving the courtroom, perhaps out of consternation at his testimony, Mr. Harmon told him in a clearly audible voice that I heard, "November 17."

I think, and *I can't say whether the jury heard it or not,* but that in light of the question which was clearly objectionable and was sustained, "Why are you a guest of the Clark County Detention Center?" could certainly suggest to the members of this jury that this man is a guest in the Clark County Detention Center for something far more serious than grand larceny auto.

I think it's been clearly established that we have a major violator case here and that the suggestion is that, unfortunately, that the prosecutor intends to rectify this situation on November 17. I think the suggestion is that it's a trial date.

I don't attribute a particular malice, certainly don't, from the prosecutor as far as infecting this trial, but nevertheless, the statement was made—

THE COURT: *The statement was the recital of a date?*

MR. SMITH: Right. November 17. And I think the suggestion is that that's a date when the prosecutor is going to get even with the witness. (Emphasis supplied.)

Doyle also contends that Mr. Harmon improperly asked the jury to place itself in the position of the victim, and that the trial court erred in overruling the defense's objection to the statement. During closing arguments, Mr. Harmon addressed the jury as follows:

> Just to my left there is a man who has plunged a knife many, many times into another human being. When I get my finger scratched it hurts. When I am shaving in the morning and cut myself or nick myself a little bit, it hurts. *Can you imagine the agony of having a knife plunged into the body that many times?* (Emphasis supplied.)

We have previously observed that comments asking jurors to place themselves in the position of the victim are "exceedingly improper in and of themselves. . . ." Jacobs v. State, 101 Nev. 356, 359, 705 P.2d 130, 132 (1985) (quoting McGuire v. State, 100 Nev. 153, 158, 677 P.2d 1060, 1064 (1984)). Still, although Mr. Harmon's statement was perilously close to one we condemned in Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987),[3] we do not in this case feel justified in determining that his argument was so prejudicial as to require a new trial. There can be little doubt now, and none was raised at trial, that the killing of McNally constituted first degree murder. There was no serious dispute that the killing had been brutal in the extreme. The likelihood that the victim had suffered profound pain was obvious. The prosecutor's remarks about his experiences while shaving hardly conjured up startling visions of agony, and his passing invitation for the jury to imagine the victim's pain is unlikely to have so inflamed the jury as to blind its members to the central issue of the case, i.e., whether or not the defendant was the killer.

We have carefully reviewed Doyle's remaining assignments of error and conclude that they are without merit. The judgment of conviction is affirmed.

---

[3]At oral argument, Mr. Harmon defended his statement as being pure argument relating to the heinous nature of the offense. Mr. Harmon maintained that although Doyle defended on the grounds that he was framed and never disputed that McNally's murder was murder in the first degree, it was the prosecution's task, nonetheless, to prove each element of the offense charged. Mr. Harmon's argument is not totally unpersuasive. *See* State v. Green, 81 Nev. 173, 176, 400 P.2d 766, 767 (1965) (prosecutor may comment on the testimony, ask jury to draw inferences from the evidence, and state fully his views as to what evidence shows).