880 F.2d 1323
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Anthony Agualo ULLOA, Defendant-Appellant.
 No. 88-1451.
 United States Court of Appeals, Ninth Circuit.
 Submitted* June 29, 1989.
Decided July 26, 1989.
 Before JAMES R. BROWNING, PREGERSON and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Anthony Agualo Ulloa appeals his conviction pursuant to 9 G.C.A. Sec. 40.30 for third degree robbery. He contends that the district court erred (1) by permitting the prosecutor to question a codefendant regarding his agreement to testify truthfully under a plea agreement with the government; (2) by admitting the "truthful testimony" provision of the plea agreement itself; (3) by refusing to permit cross-examination of the codefendant concerning the difference between the sentence he faced under the indictment and the one he faced under the plea agreement; and (4) by admitting into evidence Ulloa's statements to police in violation of Miranda.
 
 
 3
 I. Admission of the "Truthful Testimony" Provision of the Plea Agreement
 
 
 4
 Ulloa contends that the prosecutor's question to John Cabrera, a cooperating codefendant, regarding the truthfulness provision in his plea agreement and the admission into evidence of the plea agreement's truthfulness provision constituted improper government vouching for Cabrera's credibility.[1] Evidentiary rulings of a district court are reviewed for abuse of discretion. United States v. Rohrer, 708 F.2d 429, 432 (9th Cir.1983).
 
 
 5
 "Vouching may occur if the prosecution places the prestige of the government behind [its] witness or indicates that information not before the jury supports the witness's testimony." United States v. Dadanian, 818 F.2d 1443, 1445 (9th Cir.1987). "As we recognized in [United States v.] Roberts, [618 F.2d 530, 536 (9th Cir.1980), aff'd, 640 F.2d 225 (9th Cir.), cert. denied, 452 U.S. 942 (1981),] every plea agreement that contains a requirement of truthful testimony contains an implication, however muted, that the government has some means of determining whether the witness has carried out his side of the bargain." United States v. Shaw, 829 F.2d 714, 717 (9th Cir.1987), cert. denied, 108 S.Ct. 1577 (1988).
 
 
 6
 In this case, the "truthful testimony" provision itself was admitted into evidence before Ulloa had cross-examined Cabrera regarding the terms of the agreement. See id. (while admission of "truthful testimony" provision in plea agreement in rebuttal to an attack on credibility is proper, this does not necessarily legitimize admission of such provision before issue of credibility is raised). However, immediately after the agreement was introduced into evidence, Cabrera was subjected to extensive cross-examination regarding the agreement and his motives for testifying. Moreover, the provision was relevant to the issue of Cabrera's potential bias. See Dadanian, 818 F.2d at 1445 (under plain error standard of review, admission of "truthful testimony" provision of cooperation agreement was proper where agreement was relevant to material facts at issue and party to agreement was subject to cross-examination as to his motives). In addition, the district court instructed the jury that it should consider Cabrera's testimony with greater caution than that of an ordinary witness.
 
 
 7
 Therefore, because this instance of alleged prosecutorial vouching "more probably than not" did not affect the verdict, see Rohrer, 708 F.2d at 432 (quoting Fed.R.Crim.P. 52(a)), the error, if any, was harmless. See Shaw, 829 F.2d at 718 (prosecutor's vouching was harmless error partly because witness' credibility was subsequently challenged on cross-examination and district court gave cautionary instruction).
 
 
 8
 The prosecutor also asked Cabrera on direct examination whether he was required under the plea agreement to "tell the truth" and "to testify honestly against Anthony Ulloa." See Shaw, 829 F.2d at 717 (prosecutor's reference to truthful testimony provision of plea agreement in opening statement was improper vouching). But see Dadanian, 818 F.2d at 1445 (under plain error standard of review, admission of testimony regarding "truthful testimony" portion of cooperation agreement was proper where agreement was relevant to material facts at issue and party to agreement was subject to cross-examination as to his motives). The prosecutor asked the question before Ulloa had an opportunity to try to impeach Cabrera on cross-examination. The prosecutor thus ran the risk that the premature questioning would be interpreted as an attempt to establish truthfulness and suggest verifiability. See Shaw, 829 F.2d at 714.
 
 
 9
 Still, the government did not offer personal assurances of Cabrera's veracity or imply that it had any method of ascertaining whether Cabrera's testimony was truthful. Nor did the government refer to facts not before the jury.[2] See Dadanian, 818 F.2d at 1445. In addition, the question of Cabrera's bias was subsequently raised when Ulloa attacked Cabrera's credibility on cross-examination. After Ulloa's cross-examination of Cabrera, the district court's cautionary jury instruction could only be taken to mean that the issue of Cabrera's credibility was open for the jury to decide.
 
 
 10
 Therefore, as with admission of the provision itself, any error in allowing the prosecutor to question Cabrera about the "truthful testimony" provision was harmless. See Shaw, 829 F.2d at 718.
 
 
 11
 II. The District Court's Refusal to Allow Cross-Examination Regarding Cabrera's Potential Sentence Absent the Plea Agreement
 
 
 12
 Ulloa contends that his right to confrontation of adverse witnesses was violated by the district court's refusal to allow him to cross-examine Cabrera about the potential sentence he faced absent the plea agreement. He argues that he should have been permitted to point out that Cabrera was facing a maximum prison term of 35 years under the indictment and a maximum term of three years under the plea agreement, and was thus provided with a strong incentive to testify favorably to the government.
 
 
 13
 A district court's decision to limit the scope of cross-examination is reviewed for clear abuse of discretion. United States v. Bleckner, 601 F.2d 382, 385 (9th Cir.1979). When the cross-examination relates to impeachment evidence, the test for abuse of discretion is whether the jury had sufficient information to appraise the biases and motivations of the witness. Id.
 
 
 14
 During his trial, Ulloa had an adequate opportunity to expose Cabrera's potential biases and motivations. Cabrera was subjected to extensive cross-examination about his agreement to cooperate with the government. The district court read most of the plea agreement to the jury, including the portions of the agreement regarding the benefits that Cabrera would receive in exchange for his testimony as a government witness at Ulloa's trial. The only limitation the court placed on cross-examination was on Ulloa's inquiries into the maximum prison term that Cabrera would have faced absent the plea agreement.
 
 
 15
 In a case very similar to the present one, we have held that when a defendant has been afforded an adequate opportunity to expose a witness' potential bias and motive in testifying, the amount of jail time a witness would have faced absent a plea agreement is at best marginally relevant, and such a limitation on the defendant's cross-examination of the witness does not violate the defendant's right to confrontation. United States v. Dadanian, 818 F.2d 1443, 1449 (9th Cir.1987). As in Dadanian, the district court's limitation on Ulloa's cross-examination of Cabrera did not violate Ulloa's right to confrontation. Therefore, the district court did not abuse its discretion in limiting Ulloa's cross-examination of Cabrera.
 
 III. Admission of Ulloa's Statements
 
 16
 Ulloa also contends that he was subjected to custodial interrogation by the police as a suspect in the robbery of the Kentucky Fried Chicken outlet and therefore should have received Miranda warnings before being questioned. He argues that any statements resulting from the questioning should have been suppressed. In addition, regardless of whether the police suspected that he was involved in the robbery, Ulloa contends that the police suspected that he was involved in the disturbance at Linda's Cafe and, therefore, should have advised him of his Miranda rights before questioning him about that incident.
 
 
 17
 The question whether a person was in custody is essentially a factual one, reviewable under the "clearly erroneous" standard. United States v. Brady, 819 F.2d 884, 886 (9th Cir.1987), cert. denied, 108 S.Ct. 1032 (1988). Whether a person is in custody depends on whether, based on the totality of the circumstances, 'a reasonable person in such circumstances would conclude after brief questioning he or she would not be free to leave.' United States v. Hudgens, 798 F.2d 1234, 1236 (9th Cir.1986) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir.1981)). Factors to be considered in making this determination include (1) the language used to summon the defendant; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings during the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. Id. at 1236.
 
 
 18
 In the present case, the record supports the district court's finding that Ulloa was not in custody during the questioning by Officer Bordallo. Bordallo did not summon Ulloa. Bordallo was called to Linda's Cafe to intervene in a disturbance that had developed between two Guamanians and five servicemen. After arriving there, Bordallo questioned Ulloa and Cabrera about the disturbance. Bordallo testified that he was inquiring solely about the disturbance at Linda's Cafe when he asked Ulloa how he had gotten to the cafe. According to Bordallo, the servicemen had told him that the fight stemmed from an incident that occurred while the two groups were driving on the road. Ulloa responded to Bordallo's question by pointing to a white pickup truck similar to the one seen by witnesses to the robbery at the Kentucky Fried Chicken outlet. Bordallo testified that he did not connect Ulloa to the robbery until after he concluded questioning Ulloa.
 
 
 19
 Bordallo did admit that he would have restrained Ulloa if he attempted to leave because all those involved in the disturbance could have potentially been charged with disorderly conduct. The reasonable belief of the defendant that he is in custody, however, not the subjective intent of the police, is controlling. See California v. Beheler, 463 U.S. 1121, 1125 (1982). Ulloa was not physically restrained or told that he was not free to leave. There was no evidence of intimidation or coercion, either physical or psychological. According to Bordallo, the interview lasted only three or four minutes. In light of all the circumstances, we cannot say that the district court's ruling that Ulloa's statements were not made during custodial interrogation was clearly erroneous.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In addition to his contentions regarding the "truthful testimony" provision of the plea agreement, Ulloa argues that the court improperly allowed into evidence the provision of the agreement that provides that the government will make the court aware of all facts and circumstances relating to Cabrera's cooperation and testimony in the case. This appears to be a misreading of the provision in the plea agreement that provides that "[Cabrera] states that he has told his lawyer all the facts and circumstances known about the charges." Because admission into evidence of this provision was not improper, Ulloa's argument is without merit
 
 
 [2]
 Ulloa's reliance on United States v. Roberts, 618 F.2d 530, 534 (9th Cir.1980), aff'd, 640 F.2d 225 (9th Cir.1981), cert. denied, 452 U.S. 942 (1981), is misplaced. In Roberts, the prosecutor's statement that a detective was monitoring the witness' testimony constituted improper vouching because it implied that the government knew whether the witness was telling the truth and was making sure that he did so. No such vouching occurred in the present case