36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis J. KREUTZER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James G. KREUTZER, Defendant-Appellant.
 Nos. 93-10485, 93-10496.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Sept. 2, 1994.
 
 Before: CHOY, LEAVY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Francis (Francis) and James (James) Kreutzer (collectively referred to as the "Kreutzers") appeal their convictions for attempted bank fraud, in violation of 18 U.S.C. Sec. 1344. They argue that the government offered insufficient evidence to support a conviction. The evidence is sufficient to support a conviction for attempt if the jury can find both (1) that defendants had the requisite specific intent to commit the crime, and (2) that the defendants took a substantial step toward committing the crime. See United States v. Hummasti, 986 F.2d 337, 338 (9th Cir.1993).
 
 
 3
 The Kreutzers argue that they did not intend to obtain money from Citibank under false pretenses. They contend, rather, that they intended to borrow from Citibank on terms requiring a change in policy by the bank. They argue that they disclosed to Citibank that the down payment would be borrowed. They contend that this disclosure avoided any misrepresentations and, therefore, they lacked intent to commit bank fraud. We disagree. The Kreutzers did not "disclose" to Citibank their intent to borrow the down payment, the escrow officer did. When the escrow officer informed James Kreutzer that Citibank required that the down payment pass through escrow, he became very upset and blurted out that he would have to find a loan for the down payment. The escrow officer informed Citibank of this development. Citibank's loan officer called off the closing.
 
 
 4
 The Kreutzers also assert that they abandoned their attempt at bank fraud when Citibank refused to fund the loan without down payment verification. Cf. United States v. Joyce, 693 F.2d 838, 841 (8th Cir.1982) (conviction for attempt reversed because defendant abandoned the attempt). They explain that when Citibank refused to go along with their terms, they abandoned the application. The government argues that when Citibank learned of the Kreutzers' intent, Citibank denied the loan. Citibank sent Francis a loan rejection letter. Citibank also recalled the loan documents from the escrow. Viewing the evidence in the light most favorable to the prosecution, the evidence supports a finding that the Kreutzers' conduct constituted an attempt.
 
 
 5
 The Kreutzers attempt to break the evidence into small pieces and attack each portion as insufficient. Taken as a whole, however, the evidence shows the Kreutzers submitted a loan application with material misrepresentations, attempted to transfer title to the property with no down payment, and planned for James to continue living in the 33rd Street house, even though they assured Citibank that Hatfield would occupy it.
 
 
 6
 Had the escrow officer not informed Citibank of the terms under which the Kreutzers wished to borrow the funds, their scheme to defraud Citibank would probably have succeeded. A rational trier of fact could determine that the Kreutzers specifically intended to defraud Citibank.
 
 
 7
 The Kreutzers point to a host of minor details that required completion before the loan could be completed. As a result, they argue, the crime would not have occurred without further steps on their part. They argue that their actions were not a substantial step toward completion of bank fraud.
 
 
 8
 The Kreutzers retained control over all of the tasks that remained to be completed. Thus, none of those tasks were independent of the will of the attempters. See United States v. Mandujano, 499 F.2d 370, 376 (5th Cir.1974). The Kreutzers argue that the act is beyond the preparation stage if, barring interruption by outside forces, a crime would result. While that is true, the substantial step requirement can also be met by conduct that falls short of that point. "In order to constitute a 'substantial step,' conduct must go beyond mere preparation and must be 'strongly corroborative of the firmness of a defendant's criminal intent.' " United States v. Smith, 962 F.2d 923, 930 (9th Cir.1992).
 
 
 9
 Here, in the loan application under Hatfield's name, the Kreutzers misrepresented Hatfield's financial situation. They failed to disclose that they had no intention of receiving a down payment from Hatfield or that they, rather than Hatfield, intended to make the down payment. They assured Citibank that Hatfield would occupy the property when James planned to continue residing there. They had loan approval from Citibank and the loan was set to close. When they discovered that Citibank would require money in escrow, they arranged for a loan from Willens, who hand-delivered the check.
 
 
 10
 The only task remaining was for them to come to the escrow office with Hatfield and sign the requisite paperwork. Hatfield had traveled from Colorado for the closing. Had the loan officer not informed Citibank of the Kreutzers' intent to borrow the down payment, the transaction probably would have closed.
 
 
 11
 The evidence supports a finding that the Kreutzers had taken a substantial step toward bank fraud. There was sufficient evidence to support the convictions.
 
 
 12
 The Kreutzers argue that the district court committed plain error when it failed sua sponte to give a specific unanimity instruction. The Kreutzers argue that their right to a unanimous jury verdict, as guaranteed by article III, Sec. 2 of the United States Constitution and the Sixth Amendment, was violated when the jury was permitted to convict them on count 8 without being required to unanimously agree as to which specific acts constituted the attempted bank fraud.
 
 
 13
 The Kreutzers assert that the indictment alleged a series of acts, each of which alone was sufficient to support a conviction for attempted bank fraud. They misread count 8 of the indictment:
 
 
 14
 The Grand Jury realleges and incorporates by reference paragraphs D. 1 and 2 of this indictment as though they are set forth in full in this count. Beginning in or about April 1989 and continuing to on or about July 14, 1989, in the District of Arizona, defendants ... along with other persons unknown to the Grand Jury, devised, and knowingly attempted to execute a scheme or artifice to obtain monies, funds, and assets, owned by and under the custody and control of Citibank ... by means of materially false and fraudulent pretenses, representations, and promises. The scheme is set forth in paragraphs D. 1 and 2 of Count 1 of this indictment.... The actions of defendants ... were carried out with the knowledge that the property was not to be sold to ... Hatfield and that the true borrower was Francis Kreutzer.
 
 
 15
 Francis' Excerpts of Record at 11. Paragraphs D. 1 and 2 provided:
 
 
 16
 1. In April 1989, defendant Sherwin Willens, sold his home located at 6109 North 33rd Street, Paradise Valley, Arizona, to Francis J. Kreutzer for the price of $675,000.00. As part of the terms of the sale, Willens provided financing to Francis J. Kreutzer through carrying back notes totalling $491,000.00. The notes were secured by an interest in the Garden Club Condominiums and on the residence located at 6109 North 33rd Street, Paradise Valley, Arizona.
 
 
 17
 2. In or about July, 1989, Fredy Charles Hatfield acting as a nominee in a sham sale was to purchase from Francis J. Kreutzer the property located at 6109 North 33rd Street, Paradise Valley, Arizona. James Kreutzer negotiated loans on behalf of Francis Kreutzer and Fredy Charles Hatfield in furtherance of the sham sale. As part of the purchase transaction, Sherwin Willens obtained from Columbia Bank and produced at the escrow company a $200,000.00 cashier's check. This $200,000.00 cashier's check was placed with the escrow company as the down payment for the purchase by Fredy Charles Hatfield, Sherwin Willens was to receive cash and condominiums. This sham sale was called off when the lender, Citibank, learned that the down payment was made through borrowed funds in violation of their escrow instructions.
 
 
 18
 Francis' Excerpts of Record at 5-6.
 
 
 19
 Contrary to the Kreutzers' assertions, the allegation here is of one scheme, by the same individuals, against one victim. Compare United States v. Gilley, 836 F.2d 1206, 1212 (9th Cir.1988) (finding plain error where the district court failed sua sponte to give a specific unanimity instruction when the facts alleged could have supported two charges of conspiracy); United States v. Payseno, 782 F.2d 832, 837 (9th Cir.1986) (finding plain error where the district court gave a general unanimity instruction in a case involving three acts of extortion which "were directed at separate victims, occurred at different times and different locations, involving different methods of communicating the threats, and were carried out by varying numbers of individuals"); United States v. Echeverry, 698 F.2d 375, 377 (9th Cir.) (finding plain error where the district court failed sua sponte to give a specific unanimity instruction where unclear whether "some portion of the jury, in casting a guilty ballot, did not envision a December conspiracy and failed to find enough evidence to believe that there was a June conspiracy, while other jurors envisioned a June conspiracy and not a December conspiracy"), modified, 719 F.2d 974 (9th Cir.1983); and United States v. Mastelotto, 717 F.2d 1238, 1247-50 (9th Cir.1983) (finding erroneous jury instructions not harmless where evidence at trial could have supported two separate schemes to defraud: "[t]hey were directed at a different sort of recipient, ... had a different qualitative content, ... induced the sale of a different variety of property, ... and took place in different time frames"). We find no error.
 
 
 20
 Francis argues that the prosecutor improperly vouched for the credibility of a government witness, Hatfield, on two occasions during the trial. In his opening statement, the prosecutor stated that Hatfield had pleaded guilty and "as part of his guilty plea is required to come and testify completely and truthfully." Francis' Excerpts of Record at 18. This is vouching. United States v. Necoechea, 986 F.2d 1273, 1278 (9th Cir.1993) (holding that prosecution's opening statement that a particular government witness "has agreed to cooperate with the government, and to testify truthfully" was vouching); see also United States v. Shaw, 829 F.2d 714, 717 (9th Cir.1987). Defense counsel moved for a mistrial after the opening statement. The district court denied the motion.
 
 
 21
 In determining whether the prosecutor's vouching during his opening statement will require reversal, we consider
 
 
 22
 a number of factors including: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.
 
 
 23
 Necoechea, 986 F.2d at 1278. Here, the form of vouching in the opening statement contained no personal opinion. The implication that the prosecutor had extra-record knowledge of or the capacity to monitor Hatfield's truthfulness was slight. On the other hand, at the time of opening statements, Hatfield's veracity had not yet been attacked[1] and his testimony was very important to the prosecution.
 
 
 24
 In Shaw, this court found prosecutorial vouching in opening statement harmless error where the court instructed the jury that the issue of credibility was for it to decide and that the witness was the beneficiary of a plea agreement and that witness' testimony should be viewed with caution. 829 F.2d at 718.
 
 
 25
 Here, the district court gave several jury instructions on credibility. Before opening statements, the court informed the jury, "It will be up to you to decide which witnesses to believe and which witnesses not to believe, and how much of any witness' testimony to accept or reject. And I will give you some guidelines for determining the credibility of witnesses at the end of the case." Reporter's Transcript (RT) at 162-63. At the end of the trial, the court admonished the jury that arguments and statements by lawyers are not to be considered as evidence. James' Excerpts of Record at 360. The court instructed the jury that it was the jury's duty to decide whom to believe. Id. at 361-62. The court also gave an instruction advising the jury to view Hatfield's testimony with great caution. James' Excerpts of Record at 364. Because of these instructions, it is more probable than not that the vouching in opening statements did not materially affect the verdict. The error was harmless. See also Shaw, 829 F.2d at 718.
 
 
 26
 Francis argues that the prosecutor again vouched for Hatfield's credibility during redirect examination with the following questions:
 
 
 27
 Q: Is testifying here one of the requirements of that plea agreement?
 
 
 28
 A: Yes.
 
 
 29
 Q: What does the plea agreement say? What is your understanding about what the plea agreement requires in your testimony here?
 
 
 30
 A: That I testify and tell the truth.
 
 
 31
 Q: What happens if you don't tell the truth?
 
 
 32
 A: Then my plea agreement probably would not be accepted.
 
 
 33
 Q: I'm sorry?
 
 
 34
 A: My plea agreement would not be accepted.
 
 
 35
 Q: And if your plea agreement is not accepted, what's your understanding about the consequences of that?
 
 
 36
 A: Then I would probably be on trial next.
 
 
 37
 Francis' Excerpt of Record at 21. Francis did not object.
 
 
 38
 In Necoechea, we held that a prosecutor's question on direct examination asking "if it were part of her agreement that she 'testif[y] truthfully and cooperat[e]' to which she responded yes[,]" was not vouching because the "question does not imply a guaranty of the witness' truthfulness, refer to extra-record facts, or reflect a personal opinion." 986 F.2d at 1278-79. The prosecutor's redirect examination of Hatfield is not vouching for the same reasons.
 
 CONCLUSION
 
 39
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 When the prosecution refers, as it did here, to the requirement of truthfulness before the issue of bias is drawn, it runs the risk that its reference will be interpreted as an attempt to establish truthfulness and suggest verifiability. We agree, however, with the government that what was said is more important than when it was said, at least in a case such as this one where an attack on the witness' credibility was almost certain to be forthcoming
 Necoechea, 986 F.2d at 1278 n. 2 (quoting Shaw, 829 F.2d at 717).