DONALD LEE SESSIONS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 24814

March 2, 1995      890 P.2d 792

*Wright, Judd & Winckler,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

Donald Lee Sessions was convicted by jury verdict of one count of attempted theft and one count of conspiracy to commit theft. He now asserts, *inter alia*, that allowing the jury to inspect a co-defendant's written plea agreement with the State was improper. More particularly, Sessions contends that the district court abused its discretion by failing to excise, prior to the jury's inspection, a provision conditioning the validity of the agreement on the co-defendant's truthful testimony. Furthermore, Sessions insists that the plea agreement between the State and the co-defendant was invalid for not having been reduced to writing prior to entry of the plea. For reasons discussed hereafter, we affirm the judgment entered below with instructions to henceforth excise, prior to inspection by the jury, language in written plea agreements conditioning their validity on the truthfulness of the co-defendant's testimony.

## FACTS

This case evolved from an elaborate scheme between co-conspirators to ostensibly turn $1.00 bills into $100.00 bills through a chemical process. In reality, the co-conspirators' alleged purpose was to commit theft against those who "invested" their money in the operation. Charged in the information with attempted theft and conspiracy to commit theft were Donald Lee Sessions, aka Phil Johnson ("Sessions"), and Gerardo Rodon, who were friends for approximately eight years prior to the conduct that eventuated in Sessions' conviction.

Sessions and Rodon entered not guilty pleas at their arraignment. Their consolidated cases proceeded to trial, at which time Rodon's attorney informed the court that Rodon would be entering a plea if the court would agree to send the matter to a different department for sentencing. The court agreed and Rodon entered a plea of guilty on the attempted theft charge with the understanding that the State would dismiss the conspiracy charge and recommend probation. The agreement, later reduced to writing, provided that Rodon was to "testify truthfully" against Sessions or the agreement would be rendered null and void.[1] The district court accepted the guilty plea.

---

[1]The written plea agreement contained the following provision:

> If you [Rodon] testify truthfully in this case, the State will recommend probation at the time of sentencing. In addition, Count II of the information, which charges conspiracy to commit theft, a gross misdemeanor, will be dismissed. Any false testimony on your part will nullify this agreement and render it void.

Before Rodon testified at trial, the State sought the court's permission, pursuant to NRS 175.282,[2] to have the jury inspect the written plea agreement. Sessions objected, unsuccessfully, on the basis that language in the agreement conditioning its validity on Rodon's truthful testimony was improper prosecutorial vouching for Rodon's credibility. The district judge concluded that the controversial provision conformed to the requirements of NRS 174.061.[3]

In connection with the agreement given to the jury for inspection, the district court instructed the jury as follows:

> You are hereby advised that GERARDO RODON was a co-defendant and has testified in this case. His negotiations are set forth in an Exhibit, which has been provided to you, wherein he must testify truthfully and probation will be recommended by the State. He has not been sentenced and the State has not indicated if they believe he has testified truthfully. You may view his testimony and regard same in the light of possible pressure to which he is subject, his desire to assist the State in obtaining a conviction, and his desire to receive probation and avoid incarceration.

Moreover, the district court included the full text of NRS 174.061 in the jury instructions.

The jury returned guilty verdicts against Sessions on both counts, resulting in consecutive sentences of five years on count one and one year on count two, both of which were suspended in favor of probation for a period not to exceed five years.

Sessions now appeals his conviction alleging three theories of

---

[2]NRS 175.282 reads as follows:

If a prosecuting attorney enters into an agreement with a defendant in which the defendant agrees to testify against another defendant in exchange for a plea of guilty or nolo contendere to a lesser charge or for a recommendation of a reduced sentence the court shall:

1. After excising any portion it deems irrelevant or prejudicial, permit the jury to inspect the agreement;

2. If the defendant who is testifying has not entered his plea or been sentenced pursuant to the agreement, instruct the jury regarding the possible related pressures on the defendant by providing the jury with an appropriate cautionary instruction; and

3. Allow the defense counsel to cross-examine fully the defendant who is testifying concerning the agreement.

[3]NRS 174.061 reads, in pertinent part:

1. If a prosecuting attorney enters into an agreement with a defendant in which the defendant agrees to testify against another defendant in exchange for a plea of guilty or nolo contendere to a lesser charge or for a recommendation of a reduced sentence, the agreement:

(a) Is void if the defendant's testimony is false.

(b) Must be in writing and include a statement that the agreement is void if the defendant's testimony is false.

reversal attributable to trial court error: (1) the denial of his right to a speedy trial; (2) an abuse of discretion in endorsing Rodon as a witness for the State without granting Sessions' request for a continuance; and (3) an abuse of discretion in allowing the jury to inspect Rodon's written plea agreement with the State.

## DISCUSSION

We have carefully considered Sessions' contentions pertaining to his right to a speedy trial and his motion for a continuance and conclude that they are meritless.[4] We choose to address more thoroughly, however, the issue of the jury's inspection of Rodon's plea agreement with the State.

Sessions contends that the district court erred in failing to excise the provision in the written plea agreement pertaining to Rodon's truthfulness, thereby vouching for Rodon's credibility and violating Sessions' constitutional right to due process and a fair trial. The State counters that it complied with the statutory provisions of NRS 174.061 and NRS 175.282, including the requirement to allow the jury to inspect "the agreement."

The two statutes at issue are relatively new. They were both adopted during the 1991 legislative session and present issues of first impression in connection with Sessions' contentions.

In the case of United States v. Wallace, 848 F.2d 1464 (9th Cir. 1988), a co-defendant testified before the jury that she had entered into a plea agreement which required her to "testify truthfully." On appeal, the *Wallace* court expressed concern that such a "truthfulness" provision suggests that a co-defendant, who might otherwise seem unreliable, has been coerced by the prosecutor's threats and promises to reveal the bare truth. *Id.* at

---

[4]On the issue of Sessions' right to a speedy trial, the State demonstrated good cause for delay, and Sessions failed to address the issue of prejudice attributable to delay. *See* Huebner v. State, 103 Nev. 29, 31, 731 P.2d 1330, 1332 (1987) (60-day time frame under NRS 178.556 is mandatory only when there is a lack of good cause for delay); Anderson v. State, 86 Nev. 829, 833, 477 P.2d 595, 598 (1970) (constitutional deprivation of right to speedy trial requires proof of prejudice attributable to delay).

On the issue of Sessions' motion for a continuance, the trial judge has wide discretion to grant or deny such a motion, and the effective cross-examination of Rodon reflects ample preparation time belying an abuse of discretion. *See* Doyle v. State, 104 Nev. 729, 731, 765 P.2d 1156, 1157 (1988) (granting of continuance is within the discretion of the trial court and will not be disturbed absent a showing of clear abuse); Dixon v. State, 94 Nev. 662, 664, 584 P.2d 693, 694 (1978) (quality of representation is a factor in reviewing for abuse of discretion); Walker v. State, 89 Nev. 281, 284, 510 P.2d 1365, 1367 (1973) (citing State v. Cotton, 443 P.2d 404 (Ariz. 1968)) ("It has been held that it is not an abuse of discretion to deny a continuance where the testimony sought is to be used for impeachment purposes.").

1474. Moreover, the implication is that the prosecutor can verify the witness's testimony and thereby enforce the truthfulness condition in the plea agreement. *Id.* Truthfulness provisions, therefore, constitute improper vouching—unless referenced in response to attacks on the witness's credibility attributable to the plea agreement. *Id.*

In the earlier case of United States v. Shaw, 829 F.2d 714 (9th Cir. 1987), the prosecutor's opening argument included a comment on the truthfulness provision contained in the plea agreement of a co-defendant turned witness, and the witness later testified concerning the provision. As in *Wallace,* the *Shaw* court held that truthfulness conditions in plea agreements are admissible to rebut prior impeachment, but not admissible in anticipation of impeachment. *Id.* at 716. Also, the court noted that bare references to such provisions are not as damaging as references coupled with further reference to extra-record facts. *Id.* at 717; *see* United States v. Brown, 720 F.2d 1059 (9th Cir. 1983) (prosecutor indicated that witness would be subject to polygraph test); United States v. Roberts, 618 F.2d 530 (9th Cir. 1980) (prosecutor told jury that a government agent was in the courtroom to monitor the witness's testimony). Although *Shaw* involved no reference to extra-record facts, the court nevertheless concluded that the message of truth coming out before any issue of bias was raised constituted improper vouching. 829 F.2d at 717.

Returning to Nevada's statutory matrix, we note that NRS 175.282 unequivocally requires the court to "permit the jury to inspect the agreement" after excising any portion it deems irrelevant or prejudicial; the statute thus mandates jury inspection of the agreement. However, the statute provides for trial court discretion to excise portions of the agreement the court deems irrelevant or prejudicial.[5]

Although NRS 174.061 requires that plea agreements "include a statement that the agreement is void if the defendant's testimony is false," such a requirement only operates to invalidate the benefit of the negotiated agreement in the event the witness testifies falsely. We do not ascribe a legislative purpose in NRS 174.061 to include the introduction of prejudicial material against the defendant who is the subject of the testimony. The statutory imposition relating to the nullification of a plea agreement upon

---

[5]We note that this statute only allows the jury to "inspect the agreement." It does not provide a basis for the prosecution to comment on the truthfulness of the witness's testimony as it relates to the agreement. We also note that the State in the present case never indicated that it believed Rodon testified truthfully. This fact was acknowledged by the district court in the cautionary jury instruction.

"[a]ny false testimony on [the testifying defendant's] part," and the provision added by the State subjecting the agreement to the condition that the testifying defendant "testify truthfully," are, in the context of the instant issue, functional equivalents. Language invalidating a plea agreement for false testimony is the practical equivalent of conditioning the validity of such an agreement upon truthful testimony. In either case, inferences of vouching, daring to speak aught but the truth, and a prosecutorial monitor to disabuse the jury of any false testimony, may be drawn by the jury to the prejudice of the defendant.

The precise statutory language of NRS 174.061 requires that the written agreement "include a statement that the agreement is void if the defendant's testimony is false." As noted above, we are of the opinion that the Legislature mandated the inclusion of such invalidating language in plea agreements in order to deprive the testifying defendant of an undeserved bargain where the recipient of the bargain testifies falsely. We do not glean from the measure a legislative purpose to prejudice the defendant against whom the testimony is given. We therefore conclude that neither the provision added by the State requiring "truthful testimony," nor the statutory provision declaring an agreement void when perverted by false testimony are to be included within the written agreement provided for a jury's inspection. In other words, our district courts have both the discretion and the obligation to excise such provisions unless admitted in response to attacks on the witness's credibility attributed to the plea agreement.

Despite our conclusion, we perceive no compelling reason to reverse Sessions' conviction on the present facts. The cautionary jury instruction given to the jury on the risks inherent in plea agreements negated any prejudicial effect the written plea agreement may have otherwise had on the minds of the jurors. Although the district court should have exercised its discretion to excise the "testify truthfully" and "void if false" language from the agreement prior to inspection by the jury, the error was harmless. *See Shaw,* 829 F.2d at 717-18 (cautionary jury instruction rendered erroneously allowed prosecutorial vouching harmless).

Sessions also contends on appeal that NRS 175.282 and NRS 174.061 require that a plea agreement be reduced to writing *prior* to entry of the plea, which was not done in the present case. We are unaware of statutory support for such a proposition.

The language in NRS 174.061 voiding a plea agreement if the defendant's testimony is false, together with the language in NRS 175.282 requiring the court to permit the jury to inspect the agreement, implies that the operative event prior to which the agreement must be reduced to writing is the testimony of the defendant at trial. We note further that Sessions' contention that the writing requirement is to prevent witnesses from withdrawing their pleas after having entered them with the court fails to recognize the significance of those cases in which the testimony of a defendant is proffered prior to entering a plea, in which case a writing is nevertheless required at trial. Indeed, NRS 175.282(2) acknowledges such cases by imposing the further requirement of a cautionary jury instruction "[i]f the defendant who is testifying *has not entered his plea.*" (Emphasis supplied.) The logical conclusion, therefore, is that there is more to the foregoing statutes than advanced by Sessions. Specifically, the writing requirement has little to do with deterring plea withdrawal and more to do with the presentation of truthful testimony and jury edification concerning the nature of the risks associated with plea agreements.

## *CONCLUSION*

For the reasons discussed above, we affirm the jury verdict and judgment of conviction with instructions that the district courts hereafter adhere to the dictates of this opinion regarding the constraints upon plea bargain agreements provided to juries for their inspection.